LUIS ALVAREZ ET AL., Plaintiffs and Appellees, *v.* NATIONAL FIRE INSURANCE Co., Defendant and Appellant.

No. 4177. Argued April 19, 1928.—Decided May 31, 1929.

*José Sabater* for the appellant. *Benet & Soufront* for the appellees.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

Luis Alvarez was established in the drygoods business in Mayagüez about the years 1923 and 1924. On December 15,

1923, and April 28, 1924, he insured for a year the stock and fixtures of his establishment with the National Fire Insurance Company for the sums of ten thousand and fifteen thousand dollars respectively. The Royal Bank of Canada had an interest in said policies amounting to $1,224.00 at the time of the filing of the suit.

On the morning of June 12, 1924, the properties insured were almost completely destroyed by fire. The National Fire Insurance Co. having refused to pay the total of Alvarez's claim and to submit the matter to arbitration, Alvarez and the Royal Bank of Canada then brought this action and alleged that the stock destroyed was worth more than $23,323.93 and the fixtures more than $5,511.90, and therefore claimed the whole amount of the policies, namely, $25,000, plus legal interest thereon from the 12th of June, 1924, with costs, disbursements and attorney's fees.

Defendant admitted in its answer the facts of the issuance of the policies and the fire, but alleged that the latter was caused wilfully and maliciously by Alvarez or with his complicity to defraud defendant. The company accepted the destruction of the stock and fixtures, but alleged that the former was only worth $11,478.77 and the latter $3,002.88. As special defenses it pleaded, before the trial, violation of the iron safe clause, fraudulent claim for fire loss, malicious fire and failure to file a statement before the municipal court of the stock and effects saved from the fire, and, after the submission of the evidence, that insured did not inform the insurer of the existence in his establishment of an electrical apparatus to draw water or of a heap of empty boxes, paper and straw from doll packing boxes and paper and pasteboard refuse near said apparatus.

The court, after a trial, took the matter under advisement and rendered judgment for plaintiffs as prayed for in the complaint. It declared in its findings all the facts alleged by plaintiffs to have been proved, and as to the special defenses of defendant it said:

"Defendant alleged as special defenses:

"(a) That insured did not comply with the clause in the policy that the account books should be kept in an iron safe, and said defendant alleged that plaintiff Luis Alvarez allowed the destruction by fire of the register of vouchers.

"As to this allegation, the court finds that plaintiff complied specifically and substantially and in all its particulars with the iron safe clause, having preserved in an iron safe a complete set of books of the voucher system, from which the court and the experts were able to estimate without any difficulty the amount and the value of the stock and fixtures of plaintiff's business on the date of the fire, that is to say, a verification of the last inventory, the effects bought by plaintiff for his business from the date of the last inventory, the total of sales for that date and the average profit thereon. It was shown, in the opinion of the court, that the absence of the register of vouchers mentioned by defendant did not affect the system of accounting employed by plaintiff Luis Alvarez, nor was it necessary and indispensable to keep said register of vouchers which might be considered simply as an index.

"(b) Defendant likewise alleged that insured presented to it an itemized claim for loss and damages for the whole amount of the policy, knowing that the value of the stock of his business on the date of the fire amounted only to $11,478.77 and that of the fixtures to $3,002.88, and defendant not only failed to prove that averment, but plaintiff showed satisfactorily, in the opinion of the court, that the value of the stock and fixtures on the date of the fire was the same as that alleged in the complaint, namely, $23,323.93 in stock and $5,511.90 in fixtures.

"(c) Defendant alleged that, according to its information and belief, the fire which destroyed plaintiff's establishment was caused wilfully and maliciously by him or with his complicity, using for that purpose gasoline which on being ignited exploded and rapidly set fire to insured's establishment destroying all its contents. The court is of the opinion that from the evidence introduced there is nothing worthy of credence on which to base a charge against plaintiff of having maliciously set fire to his establishment or that the same was done with his complicity; nor does the evidence show any motive for the plaintiff's maliciously setting fire to his establishment in order to collect his insurance policies or that plaintiff's finances were, as revealed by the condition of the business, in a precarious or ruinous condition. The court also came to the conclusion that the fire which destroyed plaintiff's establishment

was not caused by any explosion, which fact was shown by the condition of the establishment when the fire started, as seen by some of the witnesses who gave evidence and who went into the building at the time, and besides because the explosion, to which reference was made by one or two of defendant's witnesses, was the report of simultaneous pistol shots fired from the hotel situated on the upper floor of the building occupied by plaintiff's business at the beginning of the fire, or the noise caused by the breaking of the shop window on MacKinley street by the impact of a stone thrown against it after the fire was started, because none of the witnesses who were in the hotel heard such explosion apart from the shots mentioned and the breaking of the shop window.

"(d) Defendant alleged that insured never filed with the municipal judge of Mayagüez, where the fire took place, a statement showing the effects in stock at the time of the fire and those that were saved, as well as the amount of the loss suffered, but from the evidence introduced it was shown that plaintiff Alvarez complied with such requisites in a satisfactory manner.

"(e) Defendant likewise alleged that plaintiff Luis Alvarez, knowing that there was in the yard of his business premises which were covered by insurance a water drawing apparatus operated by an electrical motor which, in the opinion of defendant, was an essential fact in estimating and accepting the risk, did not inform the company of that fact. As to this point the court has reached the following conclusions: 1. That defendant did not show that plaintiffs had concealed such fact from the company in order to get the policies in question; 2. That as there was no answer, that is to say, that it was left blank, to the question in that respect in an application for a previous policy on the same stock and fixtures, and this being the only application produced in evidence by defendant, and as such previous policy had been issued as well as those constituting the object of this suit, without any investigation being made by defendant, said policies were issued by said company at its own risk; 3. That as defendant's agent had been present in plaintiff's premises when application was made for such former policy and as he had an opportunity to make a proper examination of the premises, there could have been no concealment on plaintiff's part of a fact which, according to defendant, was patent; 4. That if there had been any concealment on the part of plaintiff such concealment would not have affected the right to collect the policies, because it was shown that the existence of such electric motor did neither affect nor increase at all the fire

risk, nor was it taken into consideration by the insurance company to raise the premium, since it was shown that said motor was only a ¼ H. P. motor and that it could not cause any fire, it being shown that only electric motors above one horse power for industrial purposes could be taken into consideration for raising the premium.

"(f) Defendant alleged as a last defense that plaintiff Luis Alvarez did not get either its consent or acquiescence, nor was it advised or informed in that respect directly or through its authorized agents, for the installation of such electric motor in the yard of his premises for drawing water, and that plaintiff used said place to heap empty boxes, papers and wrappers, and this is alleged by defendant to have increased the fire risk.

"On this question, the court having come to the conclusion, from uncontradicted evidence, that the existence of said motor did not affect at all the fire risk, that it was absolutely safe and owing to its mechanism could not produce or cause any fire that might destroy the insured property, and having moreover reached the conclusion that plaintiff was not bound to notify defendant of the existence of said motor, and that there was not on his part any concealment thereof, nor would the knowledge on defendant's part of the existence of said motor have affected at all said insurance contract, either as to the risk or as to the amount of the premium, said defense lacks the necessary weight to affect the cause of action of plaintiff herein.

"As to the fact, according to plaintiff's declaration, that the motor got heated one day giving off smoke, as it was not an attempt to set on fire a case affecting by itself the insurance contract executed between plaintiff and defendant, said plaintiff was not bound to notify the defendant company and therefore did not violate by his silence or oversight any of the conditions of said insurance policies."

The opinion ends as follows:

"Resuming: Plaintiffs have proved all and each of the facts alleged in the complaint to the satisfaction of the court, and defendant having failed to prove any violation by plaintiffs of any of the conditions of the insurance policies referred to, nor having established any defense pertinent in law which might affect the cause of action of plaintiffs Luis Alvarez and the Royal Bank of Canada in regard to the recovery of said policies as a consequence of said fire, the court is of the opinion that the law and the facts are in favor of plaintiffs and against defendant and that the complaint

must be sustained as prayed for, that is, adjudging defendant to pay to plaintiffs the sum of $25,000 plus legal interest thereon, namely, six percent per annum from June 12, 1924, until full payment thereof, and apportioned as follows: To plaintiff Luis Alvarez the sum of $23,776, plus the corresponding interest, and to plaintiff The Royal Bank of Canada the sum of $1,224 plus its shares of interest, and besides to pay plaintiffs' cost, disbursements, attorney's fees, and it is ordered that judgment be entered by the clerk of this court in conformity with this opinion.''

The transcript of the evidence prepared by the stenographer contains 1,130 typewritten pages, but its examination has been made easy owing to the correct method followed by both counsel in their pleadings. It seems to us proper to remark that very seldom have we considered better and more complete briefs than those in this case. Not a single important question or detail that the keenest mind could detect has been omitted or left out in behalf of defendant's interest by its counsel, and each important question or detail has been answered with equal clearness and precision by appellees' counsel. Neither party has confined itself to speaking on its own account. Each has made the record talk, and every refutation or defense of the equally complete and detailed conclusions of the court has been accompanied by abundant and well selected jurisprudence and quotations from authors on the matter involved which has been so much the subject of legal contention.

After a careful consideration of the facts and the law we think that the district court's opinion and judgment were justified. In the last instance, after a proper understanding of the questions of law the whole question hinges on the weighing of the evidence by the trial court in order to affirm or reverse the judgment. We have hesitated about certain points, especially when considering their presentation by appellant's counsel. But after considering all the evidence submitted by appellees' counsel and his arguments thereon, and the decisions of courts in similar cases, we have been enabled to realize how justified the decision of the district court was.

At least, the trial court having reached that conclusion from a direct examination of the evidence, this Supreme Court is not in a position to disturb it, as no manifest error, passion, prejudice or partiality has been shown.

This being so, and as it is a case of affirming a judgment on appeal, since the facts and the law have been properly considered, we do not think it necessary to write the lengthy opinion that would be required to deal properly with all the questions discussed and herein involved.

The judgment appealed from must be affirmed.